[Cite as *Beaver v. Beaver*, 2018-Ohio-4460.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

| | | |
|---|---|---|
| STEVEN C. BEAVER, | : | |
| | : | Case No. 18CA5 |
| Plaintiff-Appellant, | : | |
| | : | |
| vs. | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| KELLIE M. BEAVER, | : | |
| | : | |
| Defendant-Appellee. | : | **Released: 10/29/18** |

_____
APPEARANCES:

Stephen S. Gussler, Margulis, Gussler & Hall, Circleville, Ohio, for
Appellant.

Anthony W. Greco and Aaron E. Kenter, The Law Office of Anthony Greco,
LPA, Columbus, Ohio, for Appellee.
_____

McFarland, J.

{¶1} Steven C. Beaver appeals the Decision and Judgment Entry of

the Pickaway County Common Pleas Court, entered March 23, 2018, which

found that service of process was not perfected upon Kellie M. Beaver.

Upon review, we find the trial court did not abuse its discretion in its

decision. Accordingly, we overrule the sole assignment of error and affirm

the judgment of the trial court.

FACTS

**{¶2}** Appellant filed a Complaint for divorce in the Pickaway County Common Pleas Court on November 15, 2017.  In the complaint, Appellant alleged the parties were married in 1993, were residents of Ohio, and have three adult children.  Appellant also alleged the parties own substantial rental properties in Pickaway, Franklin, and Marion counties.[1]

**{¶3}** On December 1, 2017, Appellee filed a Motion to Dismiss pursuant to Ohio Civ.R. 12(B)(5), requesting the court to dismiss Appellant's divorce action for insufficient service of process.  In the Memorandum in Support, Appellee argued that she had commenced an action for divorce in Franklin County Common Pleas Court and that service had been perfected upon Appellant in the Franklin County case.  Our review of the Franklin County Common Pleas Court docket indicates the parties are subject of a divorce action pending in Franklin County.[2]  Also on December 1, 2017, Appellant filed a Memorandum Contra Defendant's Motion to Dismiss.

**{¶4}** On January 18, 2018, the Magistrate held a Status Hearing on other pending motions including the Motion to Dismiss.  The parties

---

[1] Along with the complaint for divorce, Appellant filed a Motion for Temporary Restraining Order, requesting Appellee be restrained from collecting and diverting marital income from rental properties. That same day, the Magistrate of the Pickaway County Common Pleas Court granted a Temporary Restraining Order.

[2] We take judicial notice of Case Number 17DR004204 located on the Franklin County Clerk of Courts website. *See Varney v. Allen,* 4th Dist. Ross No. 16CA3543, 2017-Ohio-1409, ¶ 16.

testified along with the Pickaway County process server involved in the matter, Billy R. Huffman, Jr.  Mr. Huffman, a retired Pickaway County Sheriff's Deputy, testified as to his experience serving legal papers on an almost daily basis during his 30 years of employment with the sheriff's department and for attorneys in the Circleville area.  Mr. Huffman testified that he rendered personal service of process to Appellee.

{¶5} On February 14, 2018, the Magistrate's Decision was issued. The decision set forth in pertinent part:

> "Civ.R. 4.1(C) provides that the process server 'shall locate the person to be served and shall tender a copy of the process and accompanying documents to the person to be served.' Personal service was not effected on Defendant as the process was not tendered.  In addition, residence service was not accomplished pursuant to Civ.R. 41(C) as the complaint and summons was not left with any person at the residence but placed in the front storm door.  While this Court was unable to find any Ohio cases directly on point, the Civ.R. 41 Staff notes refer to personal service as 'in hand' service."

{¶6} The Magistrate recommended that Appellee's Motion to Dismiss be granted and that the divorce continue as filed in Franklin County, where service was perfected.  On February 22, 2018, Appellant filed Objections to Magistrate's Decision.  Appellant argued that no definition of "tender" is contained in Civ.R. 4.1(B).  Appellant argued that Appellee was properly notified, "tendered" the documents, and should not be allowed to object to

service by "running away" from the process server.  Appellee filed a reply to Appellant's objections.

{¶7} On March 23, 2018, the trial court issued its Decision and Entry, which agreed with the Magistrate's Decision that Appellee was never personally served with process.  Appellee's Motion to Dismiss was granted. This timely appeal followed.  The witnesses' testimony is set forth in pertinent part below.

## ASSIGNMENT OF ERROR

> "I. THE TRIAL COURT ERRED IN FINDING THAT THERE WAS A FAILURE OF PERSONAL SERVICE PURSUANT TO RULE 4.1(b), OHIO RULES OF CIVIL PROCEDURE, IMPOSING REQUIREMENTS OF ACCEPTANCE BY THE PERSON BEING SERVED OR PHYSICAL TOUCHING BY THE PROCESS SERVER, WHEN NO SUCH STANDARD IS SET FORTH IN THE RULES OR EVEN NECESSARY TO COMPLY WITH THE INTENT OF SERVICE."

## STANDARD OF REVIEW

{¶8} A reviewing court will not disturb a trial court's finding regarding whether service was proper unless the trial court abused its discretion. *E.g., Huntington Natl. Bank v. Payson*, 2nd Dist. Montgomery No. 26396, 2015-Ohio-1976, at ¶ 32; *Ramirez v. Shagawat,* 8th Dist. Cuyahoga No. 85148, 2005-Ohio-3159, at ¶ 11.

LEGAL ANALYSIS

{**¶9**} Service of process must be made in a manner reasonably calculated to apprise interested parties of the action and to afford them an opportunity to respond. *Price v. Combs*, 2nd Dist. Darke No. 2015-CA17, 2016-Ohio-429, at ¶ 19; *Akron–Canton Regional Airport Auth. v. Swinehart,* 62 Ohio St.2d 403, 406, 406 N .E.2d 811 (1980), citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652 (1950). The plaintiff bears the burden of obtaining proper service on a defendant. *Cincinnati Ins. Co. v. Emge*, 124 Ohio App.3d 61, 63, 705 N.E.2d 408 (1st Dist.1997).

{**¶10**} "A [rebuttable] presumption of proper service arises when the record reflects that a party has followed the Civil Rules pertaining to service of process." *Henrickson v. Grider,* 2016-Ohio-8474, 70 N.E.3d 604 (4th Dist.), at ¶ 32, quoting *Poorman v. Ohio Adult Parole Authority,* 4th Dist. Pickaway No. 01CA16, 2002 WL 398721, *2, citing *Potter v. Troy,* 78 Ohio App.3d 372, 377, 604 N.E.2d 828 (2nd Dist.1992); *accord Bader v. Ferri,* 3rd Dist. Allen No. 1–13–01, 2013-Ohio-3074, 2013 WL 3776546, ¶ 20; *Rafalski v. Oates,* 17 Ohio App.3d 65, 66, 477 N.E.2d 1212 (8th Dist.1984). "In order to rebut the presumption of proper service, the other party must produce evidentiary-quality information demonstrating that he or she did not

receive service." *Henrickson, supra*, quoting *McWilliams v. Schumacher,* 8th Dist. Cuyahoga Nos. 98188, 98288, 98390, 98423, 2013-Ohio-29, 2013 WL 118918, ¶ 51, citing *Thompson v. Bayer,* 5th Dist. Fairfield No. 2011–CA–00007, 2011-Ohio-5897, at ¶ 23.

{¶11} Appellant argues the trial court erred in finding that the process server, Mr. Huffman, failed to personally serve Appellee.  The methods for service of process are governed by Civ.R. 4.1, which provides for service by certified mail, personal service, or residence service. *Torres v. Torres,* 8th Dist. Cuyahoga Nos. 88582, 88680, 2007-Ohio-4443, at ¶ 29.  "Personal service" is controlled by Civ.R. 4.1(B), which states in pertinent part:

> "When the plaintiff files a written request with the clerk for personal service, service of process shall be made by that method.
> * * *
> "The person serving process shall locate the person to be served and shall tender a copy of the process and accompanying documents to the person to be served. When the copy of the process has been served, the person serving process shall endorse that fact on the process and return it to the clerk who shall make the appropriate entry on the appearance docket."

{¶12} In this case, Appellant argues that the language "shall tender a copy of the process and accompanying documents to the person to be served" does not require the process server to hand the paperwork to the person being served, touch the person to be served, or to have any physical contact with the person to be served.  Appellant also argues the rule does not

require that the person acquiesce by accepting service. Under the fact pattern of this case, Appellant argues Mr. Huffman did tender process to Appellee.

{¶13} We begin with the presumption of proper service inasmuch as at the motion hearing, Mr. Huffman identified Plaintiff's Exhibit 3, which was a return of service which he executed. The "Return of Service" indicates personal service as the word "personal" is circled. However, Appellee argues she did not receive personal service. Therefore, we must review the facts presented and see if Appellee produced "evidentiary quality information" that she did not receive service.

{¶14} The Magistrate heard the following evidence at the motion hearing. Mr. Huffman testified he had been employed to serve Appellee, and he had been supplied with a photograph of her. Mr. Huffman identified the photograph, Plaintiff's Exhibit 1, and identified Appellee in the courtroom. He testified he was given a residence address for Mrs. Beaver as "2298 Spring Cress Avenue, Grove City, Ohio 43213" and went to that address three different times. Mr. Huffman also identified Plaintiff's Exhibit 2, a photograph of vehicles sitting in the driveway at the Grove City address.

{¶15} Mr. Huffman testified to two prior unsuccessful attempts to serve Appellee. His third attempt occurred on November 20th at 12:54 a.m.

It was dark, but the house had a front porch light, a yard light, and a street light which provided light in the area. Mr. Huffman testified:

> "Well, I was actually there earlier, but I sat in my car. I had been there twice in my truck, and I thought that the door was not answered because of avoiding service. So this time I took my car so no one would know. You know, what I was in there. I sat there and I waited and I saw Mrs. Beaver come out the door."

{¶16} Mr. Huffman testified he was able to see Appellee clearly, to see her face, and to identify her. He continued:

> "She started down the sidewalk, I have (sic.) her time to get down towards the truck, I was told that she would be going to work at that time. I got out of my vehicle and started across the street into the yard, and I said, 'Mrs. Beaver,' and she turned and looked at me, and started to run. And I said, 'Mrs. Beaver, there's no sense running,' I said 'you've been served.' And she said, 'No, I haven't been served mother fucker.'"

Huffman testified Appellee ran back to the house, went into the door and locked it behind her.

{¶17} On cross-examination, Mr. Huffman admitted he never got closer than approximately 30 feet to Appellee before she ran into the house. He left the paperwork between the storm door and house door and closed the storm door. He testified he marked his return as "personal service." Mr. Huffman admitted he did not touch Appellee with the papers or throw them at her. He did not say anything to Appellee until he got into her yard.

{¶18} Appellee was first examined as on cross-examination. She testified that on November 20, 2017, she was living at the Spring Cress Avenue address. She knew she had been sued and a process server was looking for her. She did not know a process server had been to her house prior to that date. She became aware of Mr. Huffman on November 20th, at approximately 1:00 a.m. when she was leaving for work. She testified as follows:

> "I called my mom and I asked her to pick me up, I was getting rides everywhere so I wasn't driving my vehicles. And my mom came to pick me up, and as she went around the corner she called me, she was in a big red truck, she called me and said, 'Kellie, I'm on my way, I will be there.' I began to walk out of the house, and I probably went out five feet, kept my door open, my lights were off just in case my mom wasn't there because I'm not used to living in the city, I'm used to living in the country and I get scared at night. I don't like the dark. I walked out of the house, began to walk out, and then all of a sudden I saw a dome light in a truck catty-cornered three doors down, a guy jumped out of the truck, started running across my yard, it scared me and I jumped back in the house."

{¶19} Appellee further testified that she did not know if Mr. Huffman was the man who ran towards the house because it was so dark. She emphasized that the individual "jumped" out of the truck and "ran." Appellee testified her mother, who was sitting in her truck with the windows rolled up, witnessed everything. Appellee specifically denied calling Mr. Huffman the offensive name. Appellee testified she has never picked up the

paperwork left in the door.  The next day, she opened the door, it fell onto the ground, and she left it there.

{¶20} On direct examination, Appellee reiterated that Mr. Huffman never touched her with the papers, didn't throw them at her.  He was screaming.  He was probably more than 30 feet from her.  She did nothing to acknowledge service.  Once she went inside, she locked the door, called her work, and told her mother to leave.  Someone banged on the door a couple of minutes, but she did not respond.

{¶21} The trial court's decision found:

> " 'Tender' is defined by Merriam Webster as the action of presenting an object for acceptance. In the case sub judice, the Court agrees that defendant was never personally served with process. Had Mr. Huffman physically touched defendant with the process, then the outcome may have been different. However, based upon the testimony presented, the Court agrees with Magistrate Peters that service was never made on defendant."

{¶22} We begin with the Supreme Court of Ohio's decision in *Sears v. Weimer* 143 Ohio St. 312, 55 N.E.2d 413 (1944), Paragraph 3 of the syllabus, where prior to the adoption of the present rules, it was held: "Personal service is to be made by delivering a copy of the summons, with the endorsement thereon, to the defendant personally." *See also Smith v. Riedy,* 3rd Dist. No. 13-78-11, 1978 WL 215751 (Sept. 14, 1978), *4.  Yet, the term "personal service" can be somewhat ambiguous.  According to

Merriam Webster's Online Dictionary, "personally" may be defined as "carried on between individuals directly." *See* https://Merriam-Webster.com/dictionary.

{¶23} In *City of Oregon v. Fox,* 6th Dist. Lucas No. L-82-317, 1983 WL 13815 (Jan. 21, 1983), the appellate court concluded Fox, an inmate, was not personally served with citations that were not personally served upon him, but were placed in a property bin at the jail.  The *Fox* court observed *1:

> "As stated in *Sears v. Weimer* (1944), 143 Ohio St. 312, 314-315: 'The term 'personal service' has a fixed and definite meaning in law. It is service by delivery of summons to defendant personally. [citations omitted] * * *.' "

{¶24} Thus, the definition of "personal service" includes an aspect of "delivery."  In *New Cooperative Co. v. Liquor Control Comm.,* 10th Dist. Franklin No. 01AP-1124, 2002-Ohio-2244, the issue was whether certified mail service had been perfected.  In the appellate decision at ¶ 12, citing *Sears* at 315, the court stated: "[p]ersonal service requires actual delivery to the person to whom it is directed or to someone who is authorized to receive service."

{¶25} In *Smith v. Riedy*, 3rd Dist. Seneca No. 13-78-11, 1978 WL 215751, the issue again was whether certified mail service was

accomplished by handing Riedy a summons.  In concluding that it was not,

however, the *Riedy* court noted somewhat more definitively at *4:

> "In Wests Ohio Practice: Rules of Civil Procedure Annotated at
> page 214 under Committee Comment for Rule 4.1(2) it is said:
> 'The procedure for effecting personal service by 'in hand'
> service is much as it always had been: the sheriff goes forth and
> hands the process to the person to be served.'

**{¶26}** *Smith* also cited the above language of *Sears* and observed that

"[t]he current civil rule does not change this concept." *Id.* at *4.

**{¶27}** In *Girard v. AFSCME Ohio Council 8, Local Union 3356,* 11th

Dist. Trumbull No. 2003-T-98, 2004 WL 3090189, the precise question was

when is an arbitration award sent via ordinary mail  deemed to be

"delivered" under  Revised Code Chapter 2711 governing arbitration.  In its

discussion, the appellate court observed at ¶ 13:

> "The term 'delivered' is not defined by the statute. Thus, it
> must be given its plain and ordinary meaning. A review of the
> definition of 'delivery' in Black's Law Dictionary reveals the
> term is used in several different contexts, including: actual
> delivery, constructive delivery, absolute delivery, and
> conditional delivery. However, the general definition of
> 'delivery' is: "[t]he act by which the res or substance thereof is
> placed within the actual or constructive possession or control of
> another. * * * What constitutes delivery depends largely on the
> intent of the parties."

**{¶28}** Our review of the case law indicates that while courts may have

endeavored to make the interpretation of "personal service" clear, many

times it is not.  And, the outcomes, in cases where personal service of

process is at issue, are driven by the facts. One solid principle is that "[p]ersonal service results in notice." *Hayes v. Kentucky Bank,* 125 Ohio St. 359, 364, 181 N.E. 542, 544 (1932). Yet, *Kentucky Bank* also observed: "Service by leaving may or may not result in notice." *Id.* As previously set forth in this case, Mr. Huffman testified he effected personal service on Appellee and he also left the documents in the storm door of the house she ran into.

{¶29} When applying the abuse of discretion standard of review, we are not free to merely substitute our judgment for that of the trial court. *Windland v. Windland,* 4th Dist. Washington No. 17CA1, 2017-Ohio- 9039, at ¶ 26, citing *Berk v. Matthews*, 53 Ohio St.3d 161, 559 N.E.2d 1301(1990) (Internal citations omitted.). Furthermore, factual findings supported by some competent, credible evidence will not be reversed. *Sec. Pacific Natl. Bank v. Roulette,* 24 Ohio St.3d 17, 20, 492 N.E.2d 438 (1986); *C.E. Morris Constr. Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 280, 376 N.E.2d 578 (1978). Here, we are mindful that the trial court is in the best position to judge credibility of testimony because it is in the best position to observe the witness's gestures and voice inflections. *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984).

{¶30} Appellee essentially admitted who she was and acknowledged that she knew Mr. Huffman's purpose if his testimony that she turned to him and said "No I haven't been served" is to be believed. Yet, Appellee testified that it was dark, she did not know if Mr. Huffman was the man who approached her, and that she did not call him an offensive name. Appellee also testified the papers he left are on the ground outside her storm door. The magistrate evidently found Appellee's testimony to be competent and credible.

{¶31} Our review of the case law demonstrates there is no rule. Hand delivery, as mentioned above, would seem to be the ideal. The case law does not indicate hand delivery is required in every instance.

{¶32} We are inclined to agree with Appellant that "tender" may have occurred. Yet, the evidence is not clear that "delivery * * * to defendant personally" occurred. "A judgment by the trial court which is correct, but for a different reason, will be affirmed on appeal as there is no prejudice to the appellant." *State ex rel. Sommers v. Perkins Local School Board of Education,* 2017-Ohio-7991, 98 N.E.3d 1117, 6th Dist.), at ¶ 5, quoting *Bonner v. Bonner,* 3rd Dist. Union No. 14-05-26, 2005-Ohio-6173, ¶ 18.

{¶33} For the foregoing reasons, we find the trial court did not abuse its discretion in finding that based upon the testimony presented, personal

service was not made upon Appellee.  Accordingly, we overrule the sole

assignment of error and affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, P.J. & Abele, J.: Concur in Judgment and Opinion.


For the Court,


BY:     _____
Matthew W. McFarland, Judge


## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**